The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHELLISE MONTGOMERY, | Case No. C09-0159-JCC |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTION |
| NORTHWEST TRUSTEE SERVICE, HELVETICA FUNDING GROUP, TRIPOINT MORTGAGE, JOHN DOE, MARY DOE, STINSON FINANCIAL, JOHN DOE, MARY DOE, LITTON LOAN SERVICING, ESCROW PROFESSIONALS, | |
| Defendants. | |

This matter comes before the Court on Plaintiff's Emergency Motion for Injunction (Dkt. No. 16), the Response of Defendants Northwest Trustee Service ("NWTS") and Helvetica Capital Funding ("Helvetica") (Dkt. No. 21), Plaintiff's Reply (Dkt. No. 22), and Defendants' Rejoinder (Dkt. No. 23). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

//

//

ORDER
PAGE - 1

## I.   BACKGROUND

According to Plaintiff's complaint, on or about May 23, 2005, she purchased a residential property located at 1321 33rd Ave South, Seattle, Washington, 98144, for $550,000. (Am. Compl. ¶ 330 (Dkt. No. 9 at 4).) Plaintiff obtained a loan for the entire $550,000 property cost from a mortgage broker and lender who are not parties to this lawsuit. (*Id.*) At some point, her loan was sold to Defendant Litton Loan Servicing ("Litton"). (*Id.* ¶ 33.) Plaintiff defaulted on her loan in the winter of 2006, whereupon Litton commenced foreclosure proceedings through Defendant NWTS. (*Id.* ¶ 34.) Plaintiff was able to reach an agreement with Litton and she allegedly paid them $20,000 to stop the foreclosure sale. (*Id.*) However, Plaintiff soon defaulted again, causing another foreclosure sale to be posted. (*Id.* ¶ 36; Resp. 2 (Dkt. No. 21).)

To avoid foreclosure, Plaintiff obtained a new mortgage from Defendant Helvetica, negotiated through Defendant Tripoint Mortgage ("Tripoint"). (Am. Compl. ¶ 40–41 (Dkt. No. 9 at 6–7).) The funds for this mortgage were disbursed on May 15, 2007. (*Id.* ¶ 47.) Plaintiff alleges that both Tripoint and Helvetica represented that Plaintiff would eventually be able to refinance the property with a lower interest rate. (*Id.* ¶ 40.) Plaintiff attempted to refinance later that year, but she was unsuccessful. (*Id.* ¶ 50–51.) On December 14, 2007, Plaintiff filed for bankruptcy protection. (*Id.* ¶ 53; Resp. 3 (Dkt. No. 21).)

On July 3, 2008, Plaintiff filed an adversary complaint in bankruptcy court against Helvetica and other mortgage companies, alleging (among other things) that they had (1) violated the Truth in Lending Act ("TILA") by misrepresenting and failing to disclose loan terms; (2) violated the Real Estate Settlement Procedures Act ("RESPA") by failing to credit late charges and penalties that Plaintiff had allegedly brought to their attention; (3) engaged in fraud, misrepresentation, and negligent lending; and (4) violated Washington's consumer protection laws. (*See* Adversary Compl. ¶¶ 13–53 (Dkt. No. 21-3 at 6–10).) Helvetica moved to dismiss the adversary case for failure to state a claim. (*See* Dkt. No. 21-3 at 15–16.) On September 5, 2008, the bankruptcy court dismissed the adversary proceedings and claims

1  against Helvetica "for the reasons stated in the motion and supporting memorandum." (*Id.*)
2  One week later, the bankruptcy judge dismissed Plaintiff's bankruptcy case in its entirety.
3  (Dkt. No. 21-3 at 14.)

4      Plaintiff again defaulted on her loan after exiting bankruptcy and a foreclosure sale was
5  set for February 6, 2009. (Resp. 4 (Dkt. No. 21).) The day of the sale, Plaintiff filed an
6  application for a temporary restraining order ("TRO") in King County Superior Court, which
7  granted the TRO that same day. (*Id.*) Plaintiff continued with the case and moved for a
8  preliminary injunction, which was granted subject to the express condition that Plaintiff submit
9  monthly payments of $7,001.04 to the King County Registry of the Court, as required by
10 Washington Revised Code 61.24.130(1)(a). Plaintiff failed to make her required payment on
11 April 20, 2009, so the state court dissolved the injunction on May 7, 2009. (Order Dissolving
12 Prelim. Inj. (Dkt. No. 21-3 at 45–46).) Once the injunction was dissolved, the foreclosure sale
13 was set for July 6, 2009. (*See* Mot. 1 (Dkt. No. 16); Resp. 6 (Dkt. No. 21).)

14     On May 8, 2009, the day after the state court injunction was dissolved, Plaintiff filed a
15 complaint in this Court. (Am. Compl. (Dkt. No. 9).)[1] Most of the federal complaint is copied
16 verbatim from the complaint Plaintiff filed in state court. (*Compare id.* with State Compl. (Dkt.
17 No. at 17–39).) The complaint alleges numerous claims against Defendants, including that they
18 (1) failed to disclose material terms and conditions of the loan as required by the TILA and
19 Washington's Mortgage Broker Practices Act, WASH. REV. CODE 19.146.030 (*see* Am. Compl.
20 ¶¶ 40, 4, 68); (2) failed to appropriately respond to a "qualified written request" under RESPA,
21 12 U.S.C. § 2605(e) (*see* Am. Compl. ¶¶ 54, 74–83); (3) engaged in fraud and
22 misrepresentation by charging excessive fees (*id.* ¶ 88), misleading her into believing that she

---

[1] On February 5, 2009, the day before she filed for a TRO in state court, Plaintiff filed a motion for leave to proceed *in forma pauperis* in federal court. (Dkt. No. 1.) Plaintiff's motion was denied because it appeared from her application that she had sufficient financial resources to pay the $350 filing fee. (Order 1 (Dkt. No. 3).) Plaintiff took no further action in federal court until May 8, 2009, when she paid the filing fee and filed her "amended" complaint.

ORDER
PAGE - 3

1  could refinance later (*id.* ¶ 89), and altering documents after they were signed (*id.* ¶ 90);

2  (4) negligently lending to her when they knew or should have known she would not be able to

3  repay (*id.* ¶ 93); and (5) engaging in unfair and deceptive practices in violation of

4  Washington's consumer protection laws (*id.* ¶¶ 97–110).

5  On June 10, 2009, Plaintiff filed this "emergency motion" for injunctive relief, seeking

6  to enjoin Helvetica and NWTS from proceeding with the foreclosure sale currently set for July

7  6, 2009. (Mot. 1 (Dkt. No. 16).) The Court indicated that it would interpret Plaintiff's request

8  as a motion for a preliminary injunction. (*See* Minute Order (Dkt. No. 19).)

9  **II.   DISCUSSION**

10  To be eligible for a preliminary injunction, Plaintiff must demonstrate either (1) a

11  likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious

12  questions are raised and the balance of hardships tips sharply in her favor. *See The Lands*

13  *Council v. McNair*, 537 F.3d 981, 1003 (9th Cir. 2008). These prongs form two ends of a

14  continuum: the less certain the Court is of Plaintiff's likelihood of success on the merits, the

15  more Plaintiff must prove that the public interest and balance of hardships tip in her favor. *See*

16  *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). Because a

17  preliminary injunction is "an extraordinary and drastic remedy," the Court may not grant

18  Plaintiff's motion unless she has carried her burden of persuasion "*by a clear showing*."

19  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (internal quotation

20  omitted).

21  Under Washington state law, the Court may not enjoin a foreclosure sale without

22  requiring the party seeking the injunction to "pay to the clerk of the court the sums that would

23  be due on the obligation secured by the deed of trust if the deed of trust was not being

24  foreclosed." Wash. Rev. Code § 61.24.130(1); *see also Tandiama v. Novastar Mortgage, Inc.*,

25  C03-0909-JLR, 2005 WL 2206890, *3 (W.D. Wash. Sept. 2, 2005). In this case, that would

26

correspond to monthly payments of $7,001.04. (*See* State Ct. Order Granting Inj. 2 (Dkt. No. 21-3 at 41).)

### A.     The Effect of the State Court's Prior Injunction

The injunctive relief that Plaintiff seeks in this motion is identical to the relief she previously received in state court. (*See id.*) If the Court were to grant Plaintiff's motion, it would have do so on the same terms that the state court imposed—namely, that Plaintiff submit monthly payments of $7,001.04. (*Id.*); *Tandiama*, 2005 WL 2206980 at *3. Plaintiff, however, was unable to make those payments and the state court injunction was therefore dissolved. (*See* Mot. 3–4 (Dkt. No. 16).) Plaintiff sought to modify the order dissolving the injunction, but the state court correctly held that "Plaintiff's personal circumstances are not grounds for modifying the amount of security required to stay [the] trustee sale." (State Ct. Order Denying Mot. for Recons. (Dkt. No. 21-3 at 42)); *see also Tandiama*, 2005 WL 2206980 at *3 ("Although the Court is sympathetic to the [Plaintiffs'] financial plight and the alleged violations that occurred, the[y] cannot remain in their home without making their mortgage payments.")

Plaintiff has provided no indication that she would be able to pay the monthly payments required to enjoin the foreclosure sale if the Court were to grant her requested relief. Indeed, her pleadings and briefing strongly suggest that she would not be able to make such payments. (*See* Mot. 3–4 (Dkt. No. 16) (explaining that Plaintiff could not make the monthly payments in state court because she had "personal issues" including "complications with her pregnancy resulting in having her baby pre-term" and an "inconsistent income stream"); Am. Compl. ¶ 66 (noting that Plaintiff was proceeding pro se because she could "not afford an attorney or the costs associated herewith [sic].").) Given Plaintiff's financial difficulties, it appears highly unlikely that any injunctive relief would last the duration of trial; instead, it would likely only push back the foreclosure sale a matter of months or even weeks. This makes it difficult for Plaintiff to demonstrate that she would suffer irreparable harm but for the injunction. Losing one's primary residence will, in most cases, constitute irreparable harm, *see Tandiama*, 2005

ORDER
PAGE - 5

1   WL 2206890, *2, but the injunctive relief sought in this motion is likely only to delay, rather
2   than prevent, such harm.
3         Moreover, the Court is troubled by the fact that Plaintiff is seeking an injunction in
4   federal court only after failing to convince the state court to modify its order dissolving an
5   identical injunction. (*See* Mot. 4 (Dkt. No. 16).) In so doing, Plaintiff is blatantly shopping for
6   a more hospitable forum. General principles of federalism and respect for state court judgments
7   push the Court strongly in favor of denying Plaintiff's duplicative injunction. If Plaintiff's
8   financial circumstances change and she becomes able to make the required monthly payments,
9   she is free to seek a modification of the dissolution order in state court. (*See* State Ct. Order
10  Denying Mot. for Recons. (Dkt. No. 21-3 at 42).) For these reasons alone, the Court finds that
11  Plaintiff's motion should be DENIED.
12        **B.    Likelihood of Success on the Merits**
13        Even disregarding the previous state court injunction and the strong suggestion that
14  Plaintiff will be unable to provide the required monthly payments, the Court would not grant
15  the motion for preliminary injunction because Plaintiff has failed to make "a clear showing" as
16  to a likelihood of success on the merits. *See Mazurek*, 520 U.S. at 972. Although she raised
17  countless allegations in her complaint, she provides no concrete evidence to support any of
18  these allegations in her motion.
19        Plaintiff primarily relies on the "preliminary results" of a "forensic audit" prepared by
20  the Property Trust Group. (*See* Reply 2 (Dkt. No. 22); Audit Report (Dkt. No. 22-2 at 1–8).)
21  This audit report purports to conclude that Plaintiff's mortgage violated the TILA and RESPA,
22  along with unidentified "state regulations." (Audit Report at 3 (Dkt. No. 22-2).) However,
23  Plaintiff fails to identify what documents were provided to this "auditor" and what analysis
24  was used to produce the report. More importantly, Plaintiff has failed to support the record
25  with the necessary documents to verify any of its legal conclusions. For example, the audit
26  determined that the mortgage violated the TILA because the loan's "funding date" was less

ORDER
PAGE - 6

than three business days after its "consummation," *see, e.g.*, 12 C.F.R. §§ 226.15(c), .23(c) (requiring that "no money shall be disbursed other than in escrow . . . until the [three-day] rescission period has expired"); here, the loan application is dated May 10, 2007 (Dkt. No. 21-2 at 31), but Plaintiff has failed to point to any document in the record indicating the date upon which the funds were actually disbursed. The report also concludes vaguely that "[t]he loan has an interest rate that does not conform to the requirements for the lender's license type in the state where the property is located" (Audit Report 3 (Dkt. No. 22-2)), but Plaintiff fails to identify any of the following: (1) the lender's license type, (2) the interest rate requirements that would be imposed on such a lender under Washington law, or (3) how her loan's interest rate violates these requirements. Without any means of verifying the conclusions in the preliminary audit report, the Court must dismiss the report as unsubstantiated hearsay.

Most of Plaintiff's remaining allegations are vague and unsupported. Plaintiff claims that Helvetica charged fees that "were greater than allowed," but she fails to identify the fees in question or to explain how they were improper. (Mot. 6 (Dkt. No. 16).)[2] Plaintiff also claims that Helvetica failed to provide necessary "disclosures" required under 15 U.S.C. § 1639, but she fails to identify which disclosures were omitted. (Mot. 6 (Dkt. No. 16).) Plaintiff makes broad allegations that Defendants "engaged in predatory lending practices" (*id.* at 4) and that their "practice is to make loans that are designed to fail" (*id.* at 1), but she provides no support or explanation for these accusations.

Plaintiff does allege two specific violations. First, she claims that that, on April 6, 2008, she submitted a "qualified written request (QWR)" for documents, and that Helvetica failed to respond in violation of 24 C.F.R. § 3500.21(e)(1). (*See* Mot. 6 (Dkt. No. 16).) Helvetica denies

---

[2] It is worth noting that Plaintiff own "audit report" concludes that the mortgage's costs and fees are proper. (Audit Report 2 (Dkt. No. 22-2) (finding that the mortgage passed "the HOEPA high cost mortgage APR threshold test" and "the HOEPA high cost mortgage points and fees threshold test").)

ORDER
PAGE - 7

ever receiving Plaintiff's QWR (Resp. 6 (Dkt. No. 21)), but even if Plaintiff successfully proved her claim, she would only be entitled to "damages in an amount not to exceed $1,000" and only "when there is a pattern or practice of noncompliance." *See* 24 C.F.R. § 3500.21(f)(1)(i). Because Plaintiff's potential relief under this claim would not affect Defendants' security interest in her home, it cannot justify enjoining the foreclosure sale.

Finally, Plaintiff claims that Helvetica promised her that she would be able to refinance her loan and then reneged on that promise (Mot. 4 (Dkt. No. 16).) Defendants vigorously deny this allegation. (Resp. 2 (Dkt. No. 21) ("At no time did Helvetica represent to Plaintiff . . . that the loan would be refinanced at a later date.").) There is no evidence in the record to support or refute Plaintiff's claim, but she bears the burden of persuasion to demonstrate that a preliminary injunction is appropriate, and, on this limited record, the Court cannot find that Plaintiff has carried her burden "by a clear showing." *Mazurek*, 520 U.S. at 972.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Emergency Motion for Injunction (Dkt. No. 16) is DENIED.

DATED this 30th day of June, 2009.

John C. Coughenour
United States District Judge