1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHELLISE MONTGOMERY,

                 Plaintiff,

       v.

NORTHWEST TRUSTEE SERVICE,
HELVETICA FUNDING GROUP,
TRIPOINT MORTGAGE, JOHN DOE,
MARY DOE, STINSON FINANCIAL,
JOHN DOE, MARY DOE, LITTON LOAN
SERVICING, ESCROW PROFESSIONALS,

               Defendants.

Case No. C09-0159-JCC

ORDER

This matter comes before the Court on Defendant Litton Loan Servicing's Motion for

Summary Judgment (Dkt. No. 32), Plaintiff's Reply Brief, which the Court takes as a Response

(Dkt. No. 39),[1] and Defendant's Reply (Dkt. No. 35).[2] Having thoroughly considered the

parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby

GRANTS the motion for the reasons explained herein.

---

[1] Plaintiff's Response was served—apparently late—on Defendants, but not docketed due to an apparent clerical error.

[2] The Court is also in receipt of Plaintiff's Motion for Reconsideration (Dkt. No. 37), although the Court, at the time of receiving it, had nothing to reconsider. The Court takes this document to be a surreply, although it does not conform to a surreply's requirements or content. However, Defendants have not moved to strike it, and the Court is lenient in considering pro se pleadings. The Court simply STRIKES the noting date on the Motion, because it is not a motion.

ORDER
PAGE - 1

I.        BACKGROUND

1

2              Plaintiff Shellise Montgomery purchased residential property in Seattle, Washington,

3      for $550,000 on May 23, 2005. (Am. Compl. ¶¶ 29, 30 (Dkt. No. 9 at 4).) She obtained a loan

4      for the entire cost of the house, and the servicing of these loans was transferred to Litton Loan

5      Servicing ("Litton") on June 3, 2005. Plaintiff was notified of the transfer soon afterwards with

6      a welcome letter. (Dkt. No. 33 at 36.)

7              In June and July 2005, Litton Loan charged Plaintiff late fees, but waived them as of

8      August 1, 2005. (Compl. ¶ 33 (Dlt. No. 9 at 6); Bordeaux Decl. ¶ 3 (Dkt. No. 33 at 2).) Then,

9      in 2006, Plaintiff ceased making payments. After several months, Litton initiated a non-judicial

10     foreclosure proceeding, scheduled for August 18 of that year. (Compl. ¶ 54 (Dkt. No. 9 at 5);

11     Notice of Trustee Sale (Dkt. No. 33 at 47).) In order to avoid foreclosure, Plaintiff entered into

12     a forbearance agreement with Litton on August 10, 2006. (Forbearance Agreement (Dkt. No.

13     33 at 52).) She acknowledged in that agreement that she was in default, and that the total

14     arrearage was $32,132.41. (*Id.*) She also agreed to make a $23,000 down payment, which

15     Litton received on August 15, 2006. (Bordeaux Decl. ¶ 6 (Dkt. No. 33 at 2).) Litton force-

16     charged insurance to Plaintiff in connection with the forbearance agreement, and then, after

17     receiving proof of insurance, refunded those payments in full before the end of November,

18     2007. (Dkt. No. 33 at 63.)

19             Plaintiff was required to make monthly payments on her loan under the forbearance

20     agreement, but she again stopped making payments in February, 2007. (*Id.*) Litton again

21     initiated foreclosure proceedings on April 17, 2007. (Bordeaux Decl. ¶ 6 (Dkt. No. 33 at 2).)

22             Plaintiff entered into a separate refinancing transaction to prevent the foreclosure.

23     Litton did not participate in the refinancing transaction, and Helvetica and Tripoint Mortgage,

24     the parties to that transaction, did not join in this motion. Once the loan was paid off in full, on

25     May 21, 2007, Litton ceased its interactions with Plaintiff, except to refund the insurance costs

26     in November. Litton now moves for summary judgment.

ORDER
PAGE - 2

1    **II.      STANDARD OF REVIEW**

2           Under Federal Rule of Civil Procedure 56(c)(2), the Court shall grant summary

3    judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits

4    show that there is no genuine issue as to any material fact and that the movant is entitled to

5    judgment as a matter of law." Summary judgment is appropriate against a nonmoving party

6    who fails to make a showing sufficient to establish the existence of an element essential to that

7    party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v.*

8    *Catrett*, 477 U.S. 317, 322 (1986). That is, after the movant has carried its burden of

9    demonstrating that there is no genuine issue of material fact, the burden shifts to the

10   nonmovant, who must present a quantum of evidence such "that a reasonable jury could return

11   a verdict" in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

12   determining whether summary judgment is appropriate, the Court must view the facts in the

13   light most favorable to the non-moving party and draw reasonable inferences in its favor.

14   *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007).

15   **III.     DISCUSSION**

16        **A.       Procedural Issues**

17          Plaintiff requests a continuance pursuant to Rule 56(f). (Dkt. No. 37 at 2.) Federal Rule

18   of Civil Procedure 56(f) allows the Court to continue a motion for summary judgment if the

19   party shows by affidavit that it cannot present facts essential to justify its opposition. Even

20   construing Plaintiff's papers liberally, Plaintiff has not carried her burden. (*See* Dkt. No. 39 at

21   2 (drawing the Court's attention to Litton's discovery answers).) Litton provided Plaintiff with

22   requested discovery on January 22, 2010. (Dkt. No. 39 at 52.) Plaintiff's response to summary

23   judgment was due on February 16, 2010, after Defendant voluntarily re-noted its summary-

24   judgment motion (presumably to accommodate the new discovery). Plaintiff vaguely alleges

25   that "the agreement entered into record shows that information was deleted but the added

26   information was not submitted to the court." (Dkt. No. 37 at 1). But Plaintiff does not direct

ORDER
PAGE - 3

1    the Court's attention to any particular discrepancy, and it is not this Court's job to go hunting

2    through the record in search of a mysterious problem. *See Coto Settlement v. Eisenberg*, 593

3    F.3d 1031 (9th Cir. 2010) ("[I]t is not the task of courts to make cases for the parties . . .")

4    Plaintiff has not shown by affidavit that she cannot counter Litton's arguments here.

5            Plaintiff also alleges that Defendants were late in providing her with discovery, which

6    she alleges violated Rule 56(c)(1)(A). This argument is without merit. Under that rule, "a party

7    may move for summary judgment at any time until 30 days after the close of all discovery."

8    Discovery in this matter closes 120 days before the trial date of September 16, 2010. Local

9    Rules W.D. Wash. CR 16(f). Thus, Defendant may move for summary judgment until May 19,

10   2010. There is no problem under Rule 56(c) and the Court declines to strike the motion.

11           Finally, Plaintiff alleges that the declaration of Theresa Bordeaux is "hearsay" and

12   "unreliable" because Plaintiff never dealt with Bordeaux. (Dkt. No. 38 at 3.) This mistakes the

13   kind of evidence that is admissible on summary judgment. Bordeaux's position at Litton is

14   sufficient to authenticate the attached documents. FED. R. EVID. 901(b)(1); *see also Block v.*

15   *City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir. 2001) (summary-judgment evidence need

16   not be of the caliber required at trial). There is no problem with Litton's supporting documents.

17        **B.    Plaintiff's TILA Claims**

18           The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, is designed to "protect

19   the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a).

20   TILA and its regulations contain detailed disclosure requirements for consumer loans. *Semar v.*

21   *Platte Valley Fed. Sav. & Loan Ass'n.,* 791 F.2d 699, 703–04 (9th Cir. 1986).

22           Only creditors are subject to civil liability under TILA. *See* 15 U.S.C. § 1640(a) (civil

23   liability extends to "any creditor" for failure to comply with any requirement of "[15 U.S.C. §§

24   1631 *et seq.*], including any requirement under [15 U .S.C. § 1635]"). A creditor is defined as:

25           "a person who both (1) regularly extends, whether in connection with loans,
             sales of property or services, or otherwise, consumer credit which is payable by
26           agreement in more than four installments or for which the payment of a finance

ORDER
PAGE - 4

charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . ."

*Id.* § 1602. Any TILA action that may be brought against a creditor may also be brought against the assignee of a creditor. *Id.* § 1641(a). However, the statute explicitly provides that loan servicers "shall not be treated as an assignee of [a consumer] obligation for purposes of this section unless the servicer is or was the owner of the obligation." *Id.* § 1641(f).

Litton was a loan servicer. It "collects payments from customers for mortgages." (Compl. ¶ 25 (Dkt. No. 9 at 4).) Plaintiff never alleges that Litton held the mortgage note. In its initial letter to Plaintiff, Litton stated that "the transfer of servicing for your loan does not affect the terms of your original mortgage instruments." (Dkt. No. 33 at 36.) And in its Forbearance Agreement, Litton again recited that it was entering into that agreement *on behalf of* Mortgage Electronic Registration Systems, Inc., which was the "owner and holder of a certain Note dated May 23, 2005 . . ." (Dkt. No. 33 at 52.) Litton never represented to Plaintiff that it held the note. Litton was therefore not covered by TILA for transactions concerning Plaintiff's note. 15 U.S .C. § 1641(f); *see also Fullmer v. JPMorgan Chase Bank, NA*, No. 2:09-cv-1037 JFM, 2010 WL 95206, at *4 (E.D. Cal. Jan 6, 2010) ("Because [Defendants] are loan servicers and not a creditor or assignee of the creditor, plaintiff's TILA claims against these defendants should be dismissed with prejudice.")

## C.    Plaintiff's RESPA Claims

The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 *et seq.*, was designed to "curb abusive settlement practices in the real estate industry." *Bloom v. Martin*, 865 F.Supp. 1377, 1385 (N.D. Cal. 1994), *aff'd,* 77 F.3d 318 (1996). To the best that the Court can decipher, Plaintiff alleges that Litton violated a number of provisions of RESPA by: (1) charging late fees during the sixty-day period from the effective date of transfer of the loan to Litton for servicing, (2) failing to make timely written notification of the transfer of servicing, (3) charging self-imposed insurance even though she already had insurance on the property, (4)

ORDER
PAGE - 5

1   failing to respond to a Qualified Written Request, and (5) charging over $10,000 in unearned

2   fees. (Compl. ¶ 33 (Dkt. No. 9 at 5); Motion for Reconsideration (Dkt. No. 39 at 3).)

3        None of these claims have merit.

4        First, Litton admittedly did charge late fees during the sixty-day period after transfer of

5   the loan for servicing,), but it refunded those charges before August 2, 2005. (*See* Transaction

6   History (Dkt. No. 33 at 45).) The refund brought Litton within the safe harbor provisions of 12

7   U.S.C. § 2605(f)(4), because they caught the error both before sixty days had passed, and

8   before Plaintiff commenced an action, and no liability may be imposed for that transaction.

9        Second, Plaintiff's claims for failing to make timely written notification of the transfer

10  of servicing, in violation of 12 U.S.C. § 2605(b), are time-barred. The applicable statute of

11  limitations requires all claims to be brought within three years of the date of the violation. 12

12  U.S.C. § 2614. The loan servicing was transferred in June 2005, and a welcome letter was

13  mailed to Plaintiff on that date. It does appear that the letter was sent a week *after* the effective

14  date of transfer, which is nominally out of compliance with § 2605(b)'s requirement that the

15  notice be given at least fifteen days *before* the effective date of transfer. Nonetheless, Plaintiff

16  filed this lawsuit in February 2009, nearly a year after the limitations period expired.

17       Plaintiff argues that the doctrine of equitable tolling should apply. (Dkt. No. 39 at 6.)

18  "The doctrine of equitable tolling has been consistently applied to excuse a claimant's failure to

19  comply with the time limitations where she had neither actual nor constructive notice of the

20  filing period." *Johns v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (citations omitted). The

21  doctrine "focuses on whether there was excusable delay by the plaintiff: If a reasonable

22  plaintiff would not have known of the existence of a possible claim within the limitations

23  period, then equitable tolling will serve to extend the statute of limitations for filing suit until

24  the plaintiff can gather what information he needs." *Id.* (citations and internal quotation marks

25  omitted). The Court finds that Plaintiff has utterly failed to explain why she could not have

26  discovered that the transfer of servicing notice was out of compliance with RESPA sooner. All

ORDER
PAGE - 6

1    of the facts that she needed to make this determination were present on the letter itself, which

2    she does not contest that she received in 2005. Equitable tolling does not apply to this claim.

3         Plaintiff's claims about her insurance payments are poorly alleged. The forbearance

4    agreement that Plaintiff signed required Plaintiff to maintain appropriate insurance on her

5    home. (Forbearance Agreement ¶ 5 (Dkt. No. 33 at 11).) The Agreement contains a clause: "If

6    Borrower fails to maintain any of the coverages described above, Lender may obtain insurance

7    coverage, at Lender's option and Borrower's expense." (*Id.* at ¶ 5 (Dkt. No. 33 at 12).) As

8    above, Litton force-charged insurance to Plaintiff, and then, after receiving proof of insurance,

9    refunded those payments in full before the end of November, 2007. (Dkt. No. 33 at 63).

10   Plaintiff does not point to a particular section of RESPA that the insurance clause and force-

11   charges would violate, but to the best the Court can decipher, she is alleging that the insurance

12   was a "sham service," (*see* Dkt. No. 39 at 3) under 12 U.S.C § 2607, which prohibits paying,

13   receiving, or exchanging unearned fees for rendering a settlement service in connection with a

14   transaction involving a federally-related loan other than for services actually performed. But

15   the Court finds as a matter of law that charging Plaintiff for insurance on her home before she

16   had demonstrated that she independently had insurance is not a "sham service."[3]

17        Finally, Plaintiff provided no evidentiary or documentary support for her statement that

18   Litton failed to respond to a Qualified Written Request, in violation of 12 U.S.C. §

19   2605(e)(1)(A), and Litton indicated that it responded to at least one such request. Similarly,

20   there is absolutely no evidence that Litton charged "over $10,000 in unearned fees." (Dkt. No.

21   39 at 3.) Plaintiff pointed to no evidence in support of this statement and the Court must

22   disregard it. Plaintiff cannot rest on bald statements in briefing to resist a properly supported

23   motion for summary judgment. *See Anderson*, 477 U.S. at 248.

---

25      [3] Furthermore, as Defendant has demonstrated, Plaintiff has been refunded the entire

26   force-charged sum, after she satisfactorily demonstrated that she had insurance to cover her
home. (Dkt. No. 33 at 63).

ORDER
PAGE - 7

1

### D.    Fraud

Plaintiff's fraud claims are either not properly considered fraud claims, or not supported by the record. Generally, Under Federal Rule of Civil Procedure 9, a Plaintiff must plead fraud with particularity. Rule 9(b)'s particularity requirement applies to state-law causes of action. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106. First, Plaintiff did not allege any claims of fraud in her complaint against Litton, and rather raised most of her arguments in response to summary judgment. Even treating Plaintiff's pro se papers liberally, Plaintiff's allegations fall short and are unsupported by the record.

Most of Plaintiff's fraud claims concern purported discovery issues, which are more properly addressed in a motion to compel. (Dkt. No. 39 at 3–5.) Nothing in the record points to a conclusion that the discovery process in this case was tainted by anything close to fraud. Most of Plaintiff's other claims concern the fact that Litton was not the owner or holder of the mortgage note, but, as described *supra*, Litton never maintained that it was, and Plaintiff does not enlighten the Court as to anything fraudulent about a loan servicer initiating a foreclosure sale on behalf of a disclosed principal note holder, nor does she point to a single case in support of this proposition. Plaintiff claims that her $23,000 down payment pursuant to the forbearance agreement was not credited toward the principal on her loan balance, but this is plainly contradicted by the Detailed Transaction History. (Dkt. No. 33 at 42–44 (listing eight itemized payments of $2884.26).) Finally, Plaintiff contests that the owner of her note was Ownit, not MERS, but again, she has not described with sufficient particularity why any documents listing MERS were fraudulent.

### E.    Breach of Contract

Plaintiff alleges that she made changes to the forbearance agreement, and "relies upon" these changes to assert an unspecified breach of contract claim. (Dkt. No. 39 at 7.) To the best

ORDER
PAGE - 8

the Court can understand, the changes involved a repayment agreement. (*See* Dkt. No. 39 at 36 (e-mail concerning repayment agreement, purportedly incorporated by Plaintiff's changes).) But Plaintiff has provided no facts indicating that Litton breached either the contract or the modification, and has not even alleged that the contract was valid as modified. *See, e.g.*, *Wagner v. Wagner*, 621 P.2d 1279 (Wash. 1980) (contract modification requires consideration). The Court cannot manufacture an argument that Plaintiff has not properly made. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

### F.    Remaining State Law Claims

Plaintiff did not respond to Litton's arguments concerning her other state law claims, to the extent that they were ever originally asserted against Litton at all. The Court takes this to be an admission that the motion has merit. Local Rules W.D. Wash. CR 7(b)(2).

### G.    Leave to Amend

Almost as an afterthought, Plaintiff requests leave to amend. (Dkt. No. 39 at 8.) Such an amendment would be Plaintiff's third in this matter, and the pleading amendment deadline has passed. (*See* Dkt. Nos. 1, 9, 31.) Moreover, amendment would be futile. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). The Court declines to allow leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, Litton Loan's Motion for Summary Judgment (Dkt. No. 32) is GRANTED.

DATED this 5th day of April, 2010.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 9